IDA G. HOGG, Admx., Plaintiff in Error, *vs.* JULIA C. HOHMANN *et al.*—(GEORGE HOHMANN, Defendant in Error.)

*Opinion filed June 23, 1928.*

1. EQUITY—*facts showing equitable jurisdiction must be proved as well as averred.* As equity has no jurisdiction to enforce purely legal demands in the absence of special circumstances, it is necessary, to sustain a decree, that facts be averred requiring equitable relief and that such facts be proved; and hence, if the facts are averred but not proved, a decree on such parts of the bill which, if standing alone, do not give the court jurisdiction is not authorized, and the objection of an adequate remedy at law may be taken advantage of though not made by the answer.

2. APPEALS AND ERRORS—*when complainant, in Appellate Court, is bound by finding of trial court that facts showing equitable jurisdiction have not been proved.* Where relief in equity is based on the averment of the bill that the defendant conspired to conceal the existence of a promissory note of the complainant's intestate, and the trial court, although finding that no conspiracy was proved, finds that the indebtedness exists and enters a money decree, the decree is properly reversed by the Appellate Court for want of equitable jurisdiction in the trial court, and the complainant, having assigned no cross-errors on the finding that no conspiracy was proved, is bound by such finding.

WRIT OF ERROR to the Second Division of the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding.

Albert Fink, Francis M. Lowes, John H. Bishop, and Henry N. Shabsin, (Haase, Hanley & Howard, of counsel,) for plaintiff in error.

Cooke, Sullivan & Ricks, (Edwin Hedrick, and Edmond W. Hebel, of counsel,) for defendant in error.

Mr. Commissioner Crow reported this opinion:

Plaintiff in error had a decree for the recovery of money, in the circuit court of Cook county, against defendant in error and other defendants. From the decree, so far as it affected him, he was allowed a separate appeal to the Appellate Court. That court reversed the judgment of the circuit court "in so far as it undertakes to enter a judgment against appellant, George Hohmann." On petition for rehearing the judgment of reversal was modified so as to reverse the decree and remand the cause, with directions to either dismiss the bill as to Hohmann, or, in the discretion of the court, to transfer the suit as to him from the chancery docket to the law docket of the court. *Certiorari* was allowed upon application of plaintiff in error to review the judgment of the Appellate Court.

Defendant in error contends that the judgment of the Appellate Court is not a final, reviewable order. Plaintiff in error contends that the Appellate Court having reversed the decree and remanded the cause as it did, the question decided by it must be reviewed by this court and the judgment of the Appellate Court reversed or affirmed.

As to Hohmann the bill averred substantially that at the time Lloyd W. Hogg, the deceased, became mentally unsound and incapable of caring for his estate he was possessed of certificates of capital stock, bonds, notes, securities and other property the value of which was in excess of $50,000, among which was a promissory note for $22,000, evidencing a debt owed by Hohmann; that the note was

given on or about March 1, 1920, for money borrowed from Hogg; that the money has not been re-paid; that complainant has made diligent search for the note but has not been able to find it; that after Hogg became mentally unsound and incapable of caring for his property and estate he became possessed of large sums of money received by way of dividends from shares of capital stock and from other sources; that Hohmann is the divorced husband of Julia C. Hohmann, one of the defendants, and was not prior to the decease of Hogg on friendly terms with her nor she with him, but since that time they have become friendly and are now conspiring and working conjointly to conceal the promissory note and to conceal from the legal representative and heirs of Hogg the fact that said indebtedness has not been paid; that complainant is informed and believes, and therefore charges the fact to be, that the promissory note was among the papers of Hogg in his safety deposit box, to which defendants Julia C. Hohmann and Marion H. Keller had access; that either Julia or Marion removed the note, and have, pursuant to the plan to cheat and defraud the legal representative and heirs of Hogg, delivered it to Hohmann, or are now holding it with the purpose and intent of concealing it from the legal representative and heirs of Hogg; that defendants, or some one or more of them, having so received the property as above set out, should be decreed by the court to hold the property and proceeds thereof in trust for the benefit of the legal representative and heirs and next of kin of Hogg and be compelled to account for the same and to pay the debt evidenced by the promissory note above mentioned. The bill prays all defendants be required to render an accounting of all moneys, issues and profits thereof received, "and that as to George Hohmann complainant may have judgment for the sum of $22,000, with interest to date, which sum is now owing by Hohmann to the legal representative and heirs of Lloyd W. Hogg, deceased."

The original answer of Hohmann denied all material averments of the bill. In an amended answer he averred that on March 1, 1920, he received from Hogg the total sum of $22,000 as his free and voluntary gift. The court found from the evidence that Hohmann was indebted to Hogg in the sum of $22,000, and that Hogg never released or gave to Hohmann the indebtedness of $22,000, and that he has never paid it and is now indebted to complainant, as administratrix, in that sum with interest, and it rendered a decree against him therefor.

It is not deemed necessary to set out at length the evidence as to George Hohmann's connection with the alleged conspiracy. The circuit court found that he was not a co-conspirator. It also found that the $22,000 had been lent to Hohmann by Hogg and that Hohmann executed his note to Hogg for that sum. Hohmann admitted that he was indebted to Hogg in the sum of $22,000. The admission is contained in the following letter found in Hogg's safety deposit box after his death and which Hohmann admitted he wrote:

"CHICAGO, 944 Leland avenue, February 28, 1920.

"Dear Lloyd—Enclosed find my check for $59 to cover interest at six per cent on the 6,000 which you were kind enough to loan me at a time when there was no one else to whom I could turn for help. Am also enclosing my note for twenty-two thousand, dated March 1st, which covers all I owe you with the exception of my everlasting gratitude for your many kind and thoughtful deeds, for which I shall ever be indebted to you and cannot possibly re-pay. Again thanking you and wishing you every joy possible in this world, believe me,

"Sincerely yours,

GEORGE."

The $6000 mentioned in the letter is the sum of two advancements admitted by Hohmann to have been made to him by Hogg and the remainder of the $22,000 for which the note was given was money which he had obtained from Hogg. He admitted that he had not paid the note. He testified that the "note never existed." In his last amended answer he averred that the alleged promissory note never

existed, but from all the facts and circumstances in the record the chancellor found that he had borrowed the money and executed the note. The Appellate Court having reversed the money decree of the circuit court for want of jurisdiction, the only question is, Did the circuit court have jurisdiction to render it?

Having been joined as a party defendant and charged with the conspiracy, and an accounting sought against Hohmann jointly with the other defendants on that ground, it was necessary to establish the facts by clear and convincing proof. If all that was charged against him in the bill were that he owed Hogg $22,000, had given his promissory note therefor and had clandestinely taken it from Hogg's box, or that it was lost, it could not be seriously contended that a court of equity could render a valid decree that he pay it. In fact, the bill did pray specifically for a judgment against him for $22,000, with interest. Equity has no jurisdiction to enforce purely legal demands in the absence of special circumstances. To maintain a decree it is necessary that facts be averred requiring equitable relief and that the facts be proved. Granting, now, that necessary facts were averred to justify a decree against Hohmann and the other defendants, the court found that the evidence did not establish them as against him. In equity, as at law, the allegations and proofs must correspond. To hold that because he gave his note and it was taken from the possession of the payee by other parties interested in his estate, or that it was lost, and therefore his liability can be determined in an equitable proceeding, is an unwarranted extension of the equitable jurisdiction. That jurisdiction is as clearly defined as that of courts of law. The ground of liability charged in the bill being that of confederacy with others to obtain the assets of the decedent, and the court having found that the evidence does not establish the confederacy as against Hohmann, nor any ground of liability except that he owes the estate the sum of money alleged to be due on his as-

330—38

sumpsit, there is no basis for sustaining the decree. It is not true that a decree may be had upon averments and charges. The rule is that the jurisdiction to render a decree rests upon the facts proved at the hearing and which were sufficiently averred in the bill disclosing the jurisdiction to proceed to decree. If not averred and established at the hearing the bill must be dismissed for want of equity. *Brauer* v. *Laughlin,* 235 Ill. 265; *Fleming* v. *Reheis,* 275 id. 132; *Tarr* v. *Stearman,* 264 id. 110; *Prather* v. *Lewis,* 287 id. 304.

In *Brauer* v. *Laughlin, supra,* the jurisdiction of a court of equity to determine legal demands and to enter a money decree, equitable grounds failing, was thoroughly considered by this court and denied. The bill sought to establish a trust and for an accounting from defendant. The evidence showed that complainant had a legal demand against defendant. The grounds of equitable jurisdiction failing, the court retained the bill and entered a money decree. The Appellate Court affirmed the decree. This court reversed the judgment of the Appellate Court and the decree of the circuit court. Sustaining the contention of defendant against the judgment for want of jurisdiction, it was said: "The rule is well understood that a party cannot resort to equity for relief when he has a complete and adequate remedy at law. This rule is not disputed by appellee, but it is contended that as the bill to which appellant filed an answer contained allegations which, if sustained, entitled complainant therein to equitable relief, the court properly retained the bill, and, notwithstanding the proof failed to sustain the allegations upon which complainant relied for equitable relief but did show that appellant was indebted to Sarah Eden for money borrowed, the court properly retained the bill and entered a decree in favor of the complainant therein, and against appellant, for the amount of money so found due, notwithstanding a recovery might have been had in an action at law. In *Toledo, St. Louis and New Orleans*

*Railroad Co.* v. *Railway Co.* 208 Ill. 623, this court said (p. 632) : 'While it is true that a court of equity which has jurisdiction of a cause by reason of the existence of some ground of equitable jurisdiction, for the purpose of doing complete justice between the parties, may, in addition to the equitable relief, afford relief of a character which in the first instance is only obtainable in a suit at law, still, to authorize relief of the latter character some special and substantial ground of equitable jurisdiction must be alleged in the bill and proved upon the hearing. Mere statements in a bill upon which the chancery jurisdiction might be maintained but which are not proved will not authorize a decree upon such parts of the bill as, if standing alone, would not give the court jurisdiction.' The Supreme Court of the United States said in *Dowell* v. *Mitchell,* 105 U. S. 430: 'The rule is, that where a cause of action cognizable at law is entertained in equity on the ground of some equitable relief sought by the bill, which it turns out cannot, for defect of proof or other reason, be granted, the court is without jurisdiction to proceed further and should dismiss the bill without prejudice,'—citing authorities. In *Carlson* v. *Koerner,* 226 Ill. 15, this court said (p. 21) : 'The mere allegation of irreparable injury, while it may be sufficient to give a court of equity jurisdiction upon the face of the bill, is not sufficient upon the final hearing unless sustained by proof.' This rule is sustained also by 16 Cyc. 111, *Tiernan* v. *Granger,* 65 Ill. 351, and cases cited by the court in *Toledo, St. Louis and New Orleans Railroad Co.* v. *Railway Co. supra,* and which need not be again here cited."

In the *Brauer case,* as in this, the ground of recovery was money lent by plaintiff to defendant without security by way of lien against property or otherwise. It was there said, as may be appropriately said in this case, no reason exists why a judgment could not have been as readily obtained in an action at law as in a suit in equity, nor is it perceived why a judgment at law would not be as efficacious

as a money decree in a court of chancery. Again emphasizing the pre-eminence of the jurisdiction of the law courts over courts of equity in cases of the character now at bar and the legal impropriety of resort to chancery, it was said: "The recovery here allowed is upon a purely legal demand, and if an action had been brought at law either of the parties would have been entitled to a jury on the trial. Courts will not permit parties to sue in chancery and upon failure to establish any basis for equitable relief have the bill retained for the purpose of a recovery upon a purely legal demand. To allow this to be done would be to deprive the defendant of his constitutional right of trial by jury."

In *Fleming* v. *Reheis, supra,* a bill in equity was filed in a matter concerning real property. The court found against defendant, and on appeal this court, reversing the decree on the ground that legal rights, only, were involved, said: "The sole ground upon which the decree in this case is based is, that all four of the deeds mentioned in the bill of complaint were without any consideration whatever and that none of them were delivered. Really the only ground upon which the decree of the court can be based is that there was no delivery of any of the deeds. The master in chancery and the court both found against appellees on the charges of fraud, and there is no reason, so far as has been suggested or as appears from the record, why the court should retain the bill simply to decide the case on the question whether or not the deeds were delivered. That defense is a legal defense and is available to appellees in the action of ejectment."

In *Prather* v. *Lewis, supra,* a bill was filed to construe a deed. The cause coming on for hearing the court entered a decree construing the deed and declaring the title to be a legal title, but the court entered a decree dismissing the bill for want of equity. The decree putting a construction on the deed was reversed because the subject matter of it was the determination of a legal right and was therefore not

within the jurisdiction of a court of equity. The construction put upon it was such as a court of law would be required to make if the conveyance were in controversy in ejectment or any proceeding where title was involved.

Allegations in the bill upon which chancery jurisdiction might be maintained but which are not proved at the trial and upon which no relief is decreed will not authorize a decree on such parts of the bill which, if standing alone, would not give the court jurisdiction. (*Tarr* v. *Stearman, supra.*) The objection of adequate remedy at law may be taken advantage of, though not made by the answer, where the allegations of the bill make a case for equitable cognizance but are not sustained by the proofs at the hearing. (*Toledo, St. Louis and New Orleans Railroad Co.* v. *Railway Co. supra.*) Many cases decided by this court sustain the principles laid down in those cited. No case lays down a different rule as to the exercise of equitable jurisdiction where only a legal right of property is involved.

In this court, as in the Appellate Court, counsel for plaintiff in error have cited and discussed at great length many authorities where resort to equity was had upon lost sealed instruments because profert was necessary at law, or on negotiable securities because of the necessity of tendering indemnity which could not at common law be furnished or required in a legal proceeding. But as said in the opinion of the Appellate Court upon the authority of Story's Equity Jurisprudence, (14th ed. secs. 126, 127,) equity will not entertain jurisdiction for relief upon a lost negotiable note or other unsealed instrument so as to decree payment upon the mere fact of loss. "The courts of law have long been able to entertain actions upon lost or destroyed bonds and other sealed instruments since the ancient requirement of profert by the plaintiff has been abrogated. Statutes have generally been enacted in the American States which permit action at law on lost negotiable paper to be brought by the owner, who is simply required, as a preliminary step,

to execute and file a bond of indemnity to the defendant. In this manner the necessity for equitable interference has been removed and all such actions to recover a money judgment upon lost obligations or negotiable instruments are brought in courts of law according to the legal modes of procedure." (1 Pomeroy's Eq. Jur.—4th ed.—sec. 71.) Section 14 of the Negotiable Instruments act is now as enacted in the revision of 1874, and provides for requirement of indemnity where a lost instrument is made the basis of an action or defense by way of set-off. The instruments and means of proof are the same in suits in equity as in actions at law. It is elementary doctrine that a bill in equity seeking recovery against an adversary must disclose facts showing that the relief sought comes within the equitable jurisdiction. If not so averred, and proved at the hearing as averred, relief will be denied and the bill dismissed for want of equity.

Plaintiff in error did not assign as cross-errors in the Appellate Court that the circuit court erroneously found that Hohmann was not a party to the conspiracy with which he was charged and which was an integral part of the grounds averred in the bill for relief in equity. They are therefore concluded by the finding and decree of the circuit court. No question remaining except that of liability at law, the Appellate Court did not err in reversing the judgment and preserving the rights of the administratrix to have the cause transferred from the equity to the law side of the circuit court for trial, as the statute authorizes.

The judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*